IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02933-PAB-CBS

JOSHUA D. CARRIER,
        Plaintiff,
v.

MICHELLE LUNDSTEDT,
AMY FITCH, and
ANDY BRYANT,
        Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on Defendants' Motion to Dismiss the Second

Amended Prisoner Complaint.  Pursuant to the Order Referring Case dated May 16, 2014 (Doc.

# 27) and the memorandum dated June 3, 2014 (Doc. # 35), this matter was referred to the

Magistrate Judge.  The court has reviewed the Motion, "Plaintiff's Brief in Opposition to

Defendants' Motion to Dismiss . . ." ("Response") (filed July 8, 2014) (Doc. # 38), Defendants'

Reply (filed July 22, 2014) (Doc. # 40), the pleadings, the entire case file, and the applicable law

and is sufficiently advised in the premises.


I.      Statement of the Case

        Proceeding *pro se*, Mr. Carrier filed his original Complaint on October 25, 2013.  (*See*

Doc. # 1). [1]  At the court's direction, he filed an Amended Complaint on December 2, 2013 and

_____

[1]        On August 21, 2014, the court directed the Clerk of the Court to appoint a member of the
Civil Pro Bono Panel to represent Mr. Carrier.  (*See* Doc. # 42).  To date, pro bono counsel has not been
identified and Mr. Carrier continues to proceed in his pro se capacity.

1

his Second Amended Prisoner Complaint on January 30, 2014. (*See* Docs. # 7, # 10, # 16, # 18).  Mr. Carrier brings his claims pursuant to Title 42 U.S.C. § 1983, supplemental jurisdiction, Title 28 U.S.C. § 1367, and "the Federal Wiretap Act", Title 18 U.S.C. § 2510 *et seq.* (formerly known as the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986 and the Communications Assistance for Law Enforcement Act of 1994. *See Quigley v. Rosenthal*, 327 F.3d 1044, 1047 n. 1 (10th Cir. 2003)). (*See* Doc. # 18 at 4 of 18).[2]  On April 18, 2014, Senior District Judge Babcock dismissed Claims One and Two and Defendants May, John and Jane Does, and the County of El Paso from this civil action.  (*See* "Order to Dismiss in Part and to Draw Case to a Presiding Judge" (Doc. # 21)).  The case is proceeding on Claims Three and Four against Defendants Lundstedt, Fitch, and Bryant.  (*See id.*).

Mr. Carrier alleges that in May of 2011 he was arrested on numerous charges and was unable to post bail.[3]  (*See* Doc. # 18 at 10 of 18).  He made twelve telephone calls to his attorney between his arrest and the date he posted bail, October 25, 2011. (*See id.*).  He alleges that sometime between May 2011 and October 25, 2011, he wrote a letter to Defendant Lundstedt requesting that his attorney's phone number be placed on the "do not record list," meaning that phone calls would not be recorded.  (*See id.*).  Defendant Lundstedt later testified that attorneys are required to contact the jail to add their phone numbers to the "do not record list" and that inmates are not allowed to add their lawyers to the list.  (*See* Doc. # 18 at 11, 13 of 18).  Mr. Carrier alleges that Defendants Lundstedt, Bryant, and Fitch had access to recorded

---

[2]      While Mr. Carrier asserts supplemental jurisdiction pursuant to Title 28 U.S.C. § 1367, he alleges no supplemental claims.

[3]      Mr. Carrier is a former police officer who was sentenced to 70 years to life in prison for his convictions for sexual assault on 18 boys committed while he was a resource officer and wrestling coach at a Colorado Springs middle school.

2

phone calls and that Defendants Bryant and Fitch received a list of his phone calls, including

calls made to his attorney.  (*See id.* at 10, 12 of 18).  Mr. Carrier alleges that both Defendants

Bryant and Fitch called and talked to his attorney using the same phone number that he used

and that his phone calls were recorded, categorized, and "beginning to be listened to."  (*See*

*id.*).  A trial court judge ruled at a motions hearing held in Mr. Carrier's criminal case that the

recordings violated the attorney-client privilege.  (*See* Doc. # 18 at 10, 13 of 18).  Mr. Carrier's

trial was continued and combined with another case into a single trial at his attorney's request.

(*See id.* at 11, 14 of 18).  Based on these allegations, Mr. Carrier alleges violation of his Fifth

Amendment right to due process, his Sixth Amendment right, and the Federal Wiretap Act.

(*See* Doc. # 18 at 10-14 of 18).  He seeks declaratory and injunctive relief and compensatory

and punitive damages.  (*See id.* at 17-18 of 18).


II.    Standard of Review

Defendants move to dismiss the Second Amended Prisoner Complaint ("SAC") pursuant

to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Rule 12(b)(1) empowers a court to

dismiss a complaint for "lack of jurisdiction over the subject matter."  Dismissal under Rule

12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the

court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th

Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise

jurisdiction when specifically authorized to do so).  Defendants' assertion of Eleventh

Amendment immunity constitutes a challenge to the allegations of subject matter jurisdiction in

the SAC.  *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) ("an assertion of

Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court");

*Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) ("Once effectively asserted [Eleventh Amendment] immunity constitutes a bar to the exercise of federal subject matter jurisdiction.") (original emphasis omitted)).

The determination of subject matter jurisdiction is a threshold issue of law, *Madsen v. U.S. ex rel. U.S. Army Corps. of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987), that the court addresses before turning to the merits of the case. *Ruiz*, 299 F.3d at 1180. A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). *See also Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) ( "Mere conclusory allegations of jurisdiction are not enough; the party pleading jurisdiction must allege in his pleading the facts essential to show jurisdiction.") (internal quotation marks and citations omitted). As the party asserting jurisdiction, Mr. Carrier bears the burden of establishing that this court has jurisdiction to hear his claims. *American Fair Credit Ass'n v. United Credit Nat. Bank*, 132 F.Supp.2d 1304,1308–09 (D.Colo. 2001) (citation omitted).

Fed. R. Civ. P. Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks and citation omitted). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*,

550 U.S. at 556.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Because Mr. Carrier appears *pro se*, the court reviews his "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (court's role is not to act as pro se litigant's advocate);  *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint");  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.   Analysis

A.   Section 1983 Claims

Mr. Carrier brings two claims pursuant to 42 U.S.C. § 1983.  Section 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law."  *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970).  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  "In

5

order to successfully state a cause of action under section 1983, [Plaintiffs] must allege . . . the deprivation of a federal right and that the alleged action was taken under color of state law." *Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) (internal quotation marks and citation omitted). Mr. Carrier alleges violation of his Fifth Amendment right to due process and his Sixth Amendment right.

1.      Individual Capacity Liability: Defendants Fitch and Bryant

Mr. Carrier sues Defendants Fitch and Bryant in their capacities as prosecutors for the Fourth Judicial District Attorney's Office. (See Doc. # 18 at 2 of 18). He indicates that he is suing them in their individual capacities. (See Response (Doc. # 38) at 5 of 17). Individual capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 164, 165-67 (1985). Mr. Carrier alleges that Defendants Bryant and Fitch received a list of his phone calls, including calls made to his attorney, and had access to recordings of the phone calls he made to his attorney between May and October 25, 2011. (*See* Doc. # 18 at 10, 12 of 18).

Mr. Carrier is suing Defendants Fitch and Bryant for conduct related to their professional duties as attorneys for the Fourth Judicial District Attorney's Office. "It is well established that prosecutors are absolutely immune from suit under section 1983 concerning activities 'intimately associated with the judicial . . . process,' such as initiating and pursuing criminal prosecutions." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1489 (10th Cir. 1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)). Prosecuting attorneys are absolutely immune from suit under § 1983 for decisions to prosecute, *Hammond v. Bales*, 843 F.2d 1320, 1321 (10th Cir. 1988), to not prosecute, *Dohaish v. Tooley*, 670 F.2d 934, 938 (10th Cir. 1982), for their

6

investigatory or evidence-gathering actions, *Nielander v. Board of County Com'rs.*, 582 F.3d 1155, 1164 (10th Cir. 2009) (citation omitted), and for any related investigatory or evidence gathering functions undertaken in connection with the prosecutorial function.  *See Imbler*, 424 U.S. at 431 n. 33 (decisions entitled to immunity include "whether and when to prosecute[ ][and] whether to dismiss" a case);  *Scott v. Hern*, 216 F.3d 897, 909 (10th Cir. 2000) (prosecutor's immune conduct includes investigation, or lack thereof).  Mr. Carrier's allegations regarding Defendants' access to a list and recordings of his phone calls made between May and October 25, 2011, including calls made to his attorney, implicate Defendants' exercise of professional judgment in the performance of prosecutorial duties and therefore fall within absolute immunity.

Mr. Carrier argues in his Response, but does not allege in the SAC, that both Defendants also testified falsely in open court as witnesses. (*See* Doc. # 38 at 5 of 17).  Prosecutorial immunity does not "protect a prosecutor who offers testimony as a witness. . . ." *Douglas v. Miller*, 864 F. Supp. 2d 1205, 1215 (W.D. Okla. 2012) (citing *Kalina v. Fletcher*, 522 U.S. 118, 129-30 (1997)).  Notwithstanding, all "witnesses are absolutely immune from damages liability based on their testimony." *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983);  *Miller v. Glanz*, 948 F.2d 1562, 1570 (10th Cir. 1991).  Defendants Fitch and Bryant have absolute immunity related to Mr. Carrier's argument based on statements they made as witnesses at a motions hearing that related to a criminal trial.  In sum, Defendants Fitch and Bryant have absolute immunity from Mr. Carrier's § 1983 claims against them in their individual capacities.

2.    Individual Capacity Liability: Defendant Lundstedt

Mr. Carrier sues Defendant Lundstedt in her capacity as the telephone administrator for the El Paso County Criminal Justice Center.  In regard to an alleged Sixth Amendment violation

resulting from governmental intrusion into the attorney-client relationship, "the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right." *Howell v. Trammell*, 728 F.3d 1202, 1222 (10th Cir. 2013) (citations omitted).  No federal constitutional privilege protects confidential communications between a defendant and his attorney.  *See People v. Alexander*, 235 P.3d 873 (Cal. 2010) ("Confidential communication between a defendant and his lawyer is itself not a separate 'right' that the federal Constitution guarantees, but rather an aspect of ensuring fulfillment of the right to assistance of counsel.") (citation omitted); *Bradt v. Smith*, 634 F.2d 796, 800 (5th Cir. 1981) (In the context of a civil action in state court, "the attorney-client privilege constitutes an evidentiary privilege that is secured by state law, and not by the Constitution or laws of the United States.  As a creature of state law, the attorney-client privilege cannot be asserted as a basis for recovery under § 1983.") (citations omitted).  However, "when the [F]ifth and [S]ixth [A]mendments are considered together, the individual accused of crime does seem to have a right to attorney-client privilege." *Howell v. Trammell*, 728 F.3d at 1222 (citing Note, *The Attorney–Client Privilege: Fixed Rules, Balancing, and Constitutional Entitlement*, 91 Harv. L.Rev. 464, 485 (1977) (discussing interaction of Sixth Amendment right to counsel and Fifth Amendment right against self-incrimination)).

Mr. Carrier does not allege a violation of his right against self-incrimination.  Nor do his allegations state a violation of his Sixth Amendment right to counsel.  "[T]he Sixth Amendment guarantees a criminal defendant the right to assistance of counsel for his defense." *People v. Alexander*, 235 P.3d at 887 (internal quotation marks and citation omitted).  "A violation of the attorney-client privilege implicates the Sixth Amendment right to counsel only . . . when the government interferes with the relationship between a criminal defendant and his attorney." *Partington v. Gedan*, 961 F.2d 852, 863 (9th Cir. 1992).  Without "at least a realistic possibility of

8

injury to [the defendant] or benefit to the State, there can be no Sixth Amendment violation."
*Weatherford v. Bursey* 429 U.S. 545, 549 (1977).  *See also United States v. Cronic*, 466 U.S.
648, 658 (1984) ("Absent some effect of challenged conduct on the reliability of the trial process,
the Sixth Amendment guarantee is generally not implicated"); *Rodriguez v. Zavaras*, 42 F.
Supp. 2d 1059, 1086 (D. Colo. 1999) ("Petitioner has not established that the monitoring of his
attorney-client relationship and/or interference with same prejudiced his ability to litigate in state
criminal proceedings").  Mr. Carrier contends that due to the interception of his calls "the
plaintiff's attorney was unable to continue to prepare for the upcoming trial, which caused the
plaintiff to have to request an extension of that trial.  Because of this extension, two trials were
combined after the initial trial date, and caused the plaintiff to have to hire [an] additional
attorney to assist with extra workload."  Mr. Carrier identifies no benefit to the prosecution from
the intercepted calls and no specific evidence that the prosecution offered that was developed
as a result of an intercepted call.  His allegations do not indicate that the purpose of monitoring
and recording prison phone calls was to attempt to learn defense strategy.  *See Weatherford*,
429 U.S. at 547-58.  Mr. Carrier's allegations state no plausible possibility that he was injured
by, or the prosecution benefited from, the interception of his twelve outgoing phone calls.

   Mr. Carrier alleges pursuant to § 1983 that his rights under the Fifth Amendment to the
U.S. Constitution were violated by the recording of his phone calls to his attorney.  (*See* Doc. #
18 at 10-11 of 18).  He refers to both substantive and procedural due process (*see* Doc. # 38 at
13 of 17), but alleges no facts regarding procedural due process.  The Fifth Amendment
provides, *inter alia*, that no individual may "be deprived of life, liberty, or property without due
process of law."  U.S. Const. amend. V.  A plaintiff can demonstrate a violation of the

substantive due process clause by showing state action that shocks the conscience. *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995).

The Due Process Clause of the Fifth Amendment applies only to due process violations by the federal government. *Koessel v. Sublette County Sheriff's Dept.*, 717 F.3d 736, 748 n. 2 (10th Cir. 2013). *See also Public Utilities Comm'n v. Polak*, 343 U.S. 451, 461 (1952) (Fifth Amendment applies to and restricts only the Federal Government and not private persons); *Riley v. Camp*, 130 F.3d 958, 972 n. 19 (11th Cir. 1997) (Fifth Amendment's due process clause applies only to acts of the federal government and does not limit actions of state officials); *Myers v. County of Somerset*, 515 F.Supp.2d 492, 504 (D.N.J. 2007) (limitations of the Fifth Amendment restrict only federal governmental action and do not apply to the actions of state officials); *Pruett v. Dumas*, 914 F.Supp. 133, 136 (N.D.Miss. 1996) ("The Fifth Amendment restricts the powers of the federal government and does not apply to state actions. The Fourteenth Amendment applies to actions by the state."). Mr. Carrier's allegation of conduct by Defendant Lundstedt, a Sheriff's Office employee, does not state a Fifth Amendment claim. Moreover, because § 1983 imposes liability only for actions taken under state law, there would be no Fifth Amendment claim under § 1983. *Koessel*, 717 F.3d at 748 n. 2 (citation omitted). Mr. Carrier fails to state a claim to which relief can be granted under the Fifth Amendment.

Even if the court construes his claim as a violation of his Fifth Amendment due process rights as incorporated through the Fourteenth Amendment, Mr. Carrier fails to state a claim. The Due Process Clause of the "Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting the Due Process Clause of the U.S. Const. amend. XIV, sec. 1). "The Supreme Court's interpretation of this

10

clause explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994).  "In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective." *Seegmiller v. Laverkin City*, 528 F.3d 762, 767 (10th Cir. 2008).  One strand of the substantive due process doctrine "protects an individual's fundamental liberty interest, while the other protects against the exercise of governmental power that shocks the conscience." *Id.*  Mr. Carrier's Claim Three fails under either application of the substantive due process doctrine.

"Substantive due process claims are not based on state law but are founded upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998) (quotation and citation omitted).  Substantive due process protects "fundamental rights," which are rights contemplated by the Constitution as "implicit in the concept of ordered liberty." *McKinney*, 20 F.3d at 1556.  "Identifying a new fundamental right subject to the protections of substantive due process is often an uphill battle, as the list of fundamental rights is short." *Seegmiller*, 528 F.3d at 770 (internal quotation marks and citation omitted).

Mr. Carrier argues "[t]he fact that Defendant Lundstedt recorded the plaintiff's attorney-client conversations and then handed them over to defendant Fitch and Bryant also has shocked the conscience" and "[t]he plaintiff believes that a jury would agree that . . . it would shock the conscience." (*See* Doc. # 38 at 13-14 of 17) (internal quotation marks omitted).  However, the standard of a substantive due process violation claim is whether the alleged action shocks the conscience of federal judges, not juries. *Graves v. Thomas*, 450 F.3d 1215, 1220

11

(10th Cir. 2006) (citation omitted).   Whether specific conduct shocks the conscience is a

question of law for the court.   *See Perez v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan.*,

432 F.3d 1163, 1168 n. 4 (10th Cir. 2005) (citation omitted);   *Uhlrig*, 64 F.3d at 573 (explaining

that the standard for judging a substantive due process claim is whether the challenged

government action would shock the conscience of federal judges);   *Mason v. Stock*, 955 F.

Supp. 1293, 1308 (D.Kan. 1997) ("The conduct must shock the conscience of federal judges.   In

other words, the shock the conscience determination is not a jury question.") (internal quotation

marks and citations omitted).

The Tenth Circuit requires a plaintiff to demonstrate that the state action was not only

intentional or reckless but also that it possesses a "degree of outrageousness and a magnitude

of potential or actual harm that is truly conscience shocking."   *Uhlrig*, 64 F.3d at 574.

> Conduct that shocks the conscience . . . is deliberate government action that is
> arbitrary and unrestrained by the established principles of private right and
> distributive justice.   This strand of substantive due process is concerned with
> preventing government officials from abusing their power, or employing it as an
> instrument of oppression.   Not all government conduct is covered however, as only
> the most egregious official conduct can be said to be arbitrary in the constitutional
> sense.

*Seegmiller*, 528 F.3d at 767 (internal citations omitted).   *Cf. Camuglia v. The City of*

*Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) (noting that to properly allege a substantive

due process violation, "a plaintiff must do more than show that the government actor

intentionally or recklessly caused injury to the plaintiff by abusing or misusing government

power") (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006)).   A substantive due

process violation does not occur simply because "someone clothed with state authority causes

harm."   *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).   Rather, the substantive due

process analysis focuses on whether the conduct at issue is "shocking to the universal sense of justice." *Id.* at 850 (quoting Betts v. Brady, 316 U.S. 455, 462 (1942)).

Rule 12(b)(6) limits the court's analysis to the facts alleged in the SAC.  Even accepting the well-pled allegations of the SAC, the court cannot conclude that he has alleged facts that rise to the level of a plausible substantive due process violation.  Mr. Carrier argues that two Defendants testified falsely that they did not listen to the recorded phone calls (*see* Doc. # 38 at 5 of 17), but he does not allege that the interception of his calls in any way prejudiced his criminal trial.  He does not allege that any information was actually obtained through the interceptions or used at trial.  "[T]he governmental misconduct in deliberately intruding into the attorney-client relationship and prejudice suffered by a defendant must be very severe for the court to conclude that the government's misconduct violates fundamental fairness, shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment." *United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, D. Nev. 2006) (internal quotation marks and citation omitted).  Mr. Carrier's allegations are not sufficient to state that Defendant Lundstedt acted in "conscious disregard and unreasonable disregard," or that her actions were so oppressive or so egregious as to shock the conscience or the universal sense of justice.  He does not state a claim for violation of his Sixth Amendment right to counsel either alone or considered together with his Fifth Amendment rights.

3.    Official Capacity Liability

To the extent that Mr. Carrier is suing Defendants in their official capacities, he is actually attempting to impose liability on their employers.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit

against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself"); *Brandon v. Holt*, 469 U.S. 464, 471–73 (1985) ("a judgment against a public servant in his official capacity imposes liability on the entity he represents . . . .") (internal quotation marks and citation omitted); *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) ("[a]n action against a person in his official capacity is, in reality, an action against the government entity for whom the person works."); *Smith v. Plati*, 56 F.Supp.2d 1195, 1202 (D. Colo. 1999) ("a suit against a government employee in his official capacity [is] tantamount to a suit against the government entity itself").

The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Absent considerations not present in this case, the Eleventh Amendment forbids a suit for damages against a state in federal court. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

District Attorneys and Deputy District Attorneys qualify as arms of the State of Colorado entitled to sovereign immunity under the Eleventh Amendment as it has been interpreted by the Supreme Court. *Van De Weghe v. Chambers*, No. 13-1121, 569 F. App'x 617, 620-21 (10th Cir. June 27, 2014) (citations omitted).[4]  *See also Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989) (citing *Beacom v. Board of County Commissioners*, 657 P.2d 440, 445 (Colo. 1983) ("The Colorado Supreme Court has held that the District Attorney is an executive officer of the state.")); *Romero v. Boulder County D.A.'s Office*, No. 03-1382, 87 F. App'x 696, 698 (10th Cir.

---

[4]        Copies of unpublished cases cited are attached to this Recommendation.

2004) ("[T]he action is barred by the Eleventh Amendment as it pertains to Quiram in his official capacity and the Boulder County District Attorney's Office."); *Bragg v. Office of the District Attorney, Thirteenth Judicial Dist.*, 704 F.Supp.2d 1032, 1067 (D. Colo. 2009) (finding "that a survey of state law reflects that Defendant is a state agency subject to Eleventh Amendment immunity."); *Musick v. Pickering*, No. 05-cv-01361-REB-OES, 2005 WL 2739028, at *2 (D.Colo. Oct. 24, 2005) ("As an initial matter, it is abundantly clear that the District Attorney's Office and [Deputy District Attorney] in his official capacity enjoy Eleventh Amendment immunity from plaintiff's federal claims."). Thus, any claim for money damages brought against Defendants Fitch or Bryant in their official capacities under § 1983 is barred by the Eleventh Amendment. *Edelman*, 415 U.S. at 663. [5]

It is not clear whether Mr. Carrier is suing Defendant Lundstedt in her individual capacity, her official capacity, or both, as the telephone administrator for the El Paso County Criminal Justice Center. Because she is employed at the El Paso County Criminal Justice Center by the El Paso County Sheriff's Office (*see* Doc. # 1 at 2-3 of 13), Mr. Carrier's claims against her in her official capacity are properly brought against the El Paso County Sheriff's Office.

Municipalities and other local government entities such as the El Paso County Sheriff's Office are "persons" under § 1983, and can therefore be sued for their constitutional torts. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978). However, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations omitted). A municipality or other governmental entity "can be found liable under § 1983 only where the

---

[5]    In addition to monetary damages, Mr. Carrier seeks prospective injunctive relief in the form of issuing "an injunction ordering defendants John Doe, Jane Doe, Dan May to immediately create policies to prevent this incident from happening again, . . . ." (See Doc. # 18 at 17-18 of 18). Mr. Carrier

municipality itself causes the constitutional violation at issue.  Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694–95, 698).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").

A municipality or other governmental entity may be subjected to liability under § 1983 only where the action alleged to be unconstitutional executes or implements a governmental policy or custom.  *See Monell*, 436 U.S. at 690–91, 694 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").

> [M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal custom so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage' with the force of law. Municipal liability may be also based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions-and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Brammer–Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188–89 (10th Cir. 2010) (internal quotation marks and citations omitted).  *See also Monell*, 436 U.S. at 690-91 (distinguishing municipal policy as a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by the municipality's officers from municipal custom as "persistent and widespread ... practices of ... officials").

---

does not seek prospective injunctive relief from Defendants Fitch, Bryant, or Lundstedt.

The policy violation must also demonstrate deliberate indifference to the rights of the plaintiff. *City of Canton,* 489 U.S. at 388. *See also Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 407 (1997) ("a plaintiff who seeks to establish municipal liability ... must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences.") (internal quotation marks and citation omitted); *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003) ("The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."); *Brammer–Hoelter*, 602 F.3d at 1188–89 ("municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused") (internal quotation marks and citations omitted).

First, as the court has determined that Mr. Carrier fails to allege a prerequisite constitutional violation against Defendant Lundstedt, he fails to state a claim for relief against her in her official capacity. *See Estate of Larsen ex. Rel Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008) ("without the predicate constitutional harm inflicted by an officer, no municipal liability exists") (citation omitted); *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) (same) (citation omitted); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002) ("We will not hold a municipality liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers.") (internal quotation marks and citation omitted); *Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996) ("a municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

17

Second, Mr. Carrier does not allege that he suffered constitutional violations as a result of actions taken pursuant to any policy, custom or practice of the El Paso County Sheriff's Office. He does not identify any policy, practice, or custom of the El Paso County Sheriff's Office or allege any facts to suggest a direct causal link between any action of the government entity and a constitutional violation.  *See Bryan County*, 520 U.S. at 404.

Nor has Mr. Carrier alleged any deliberately indifferent conduct.  The SAC includes no allegation that the El Paso County Sheriff's Office or its policy makers had a sufficiently culpable state of mind, that is, that they were actually aware of and deliberately disregarded a specific risk of harm to Mr. Carrier.  *See, e.g., Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996) (general, conclusory allegations, without supporting factual averments, are insufficient to state a claim for deliberate indifference);  *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (municipal liability attaches only when the entity's policy, practice, or custom "amounted to a deliberate indifference to the constitutional right and was the moving force behind the constitutional violation") (internal quotation marks omitted);  *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (A municipality may be liable for the failure to supervise or discipline its employees "only where the need to act is so obvious, and the inadequacy of the current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.") (citing *City of Canton*, 489 U.S. at 390).  Mr. Carrier's allegations are insufficient to state a claim to which relief can be granted against Defendant Lundstedt in her official capacity under § 1983.

4.     Access to the Courts

Mr. Carrier argues, but does not allege, that "due to the fact that his attorney-client conversations were recorded, all of the defendants stifled his access to the courts." (*See* Doc. # 38 at 14 of 17).  "The right of access to the courts ... assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights."  *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).  An allegation of denial of access to the courts is viewed as an aspect of the freedom of petition clause of the First Amendment, *Harrison v. Springdale Water and Sewer Comm'n*, 780 F.2d 1422, 1427 n. 7 (8th Cir. 1986), as guaranteed by the Fourteenth Amendment.  *See Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985) (prisoner's constitutional right of access to the courts is accorded by article 4 of the Constitution and the Fourteenth Amendment, as well as by the First Amendment right to petition).

Mr. Carrier does not allege any claim under the Fourteenth Amendment and his First Amendment claim was previously dismissed.  (See Doc. # 21 at 3, 5 of 6).  Further, to state a violation of his right of access to the courts, Mr. Carrier must plead that he was actually impeded in his ability to conduct a particular case.  *See Lewis v. Casey*, 518 U.S. 343, 348–55 (1996) (To plead a violation of this right, a plaintiff must allege that the state's interference led to an "actual injury" by "frustrat[ing]," "imped[ing]," or "hinder[ing] his efforts to pursue a legal claim.");  *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from Defendants' actions.");  *Smith v. Maschner*, 899 F.2d at 944 (an inmate alleging interference with legal access must allege specific facts showing that a "distinct and palpable" injury resulted

19

from defendants' conduct.).  "[T]he right of access to the courts does not encompass the right to litigate as effectively as he would like once in court." *Jones v. Hendricks*, No. 04–1658, 173 F. App'x 180, 183 (3d Cir. Apr. 4, 2006) (citation omitted).  Mr. Carrier does not adequately plead any actual injury that resulted from Defendants' conduct.  Moreover, any claim that Mr. Carrier was denied access to the courts is defeated by his representation by counsel in his criminal cases. *Hopper v. Jawarsky*, No. 93-3451-DES, 1993 WL 455395 (D. Kan. Oct. 27, 1993). *See also Smith v. Harvey County Jail*, 889 F. Supp. 426, 431-32 (D. Kan. 1995) (an inmate's right of access to the court is adequately protected where the inmate is represented by counsel).  Any claim for denial of access to the courts is properly dismissed for failure to state a claim to which relief can be granted.

5.    Qualified Immunity

Defendants in their individual capacities raise the defense of qualified immunity to Mr. Carrier's claims.  Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).  "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (internal quotation marks and citation omitted).  "[C]ourts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*  "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Herrera v. City*

*of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).

As the court has concluded in this Recommendation that Mr. Carrier fails to state a claim upon which relief can be granted for any constitutional violation, Defendants in their individual capacities are entitled to qualified immunity and the court need not reach the "clearly established" prong of qualified immunity to conclude that dismissal is correctly granted in favor of the individual Defendants.  *See Wilder*, 490 F.3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).  Where no constitutional  violation is stated, "the inquiry ends and the officer is entitled to qualified immunity."  *Wilder*, 490 F.3d at 813.  Mr. Carrier's § 1983 claims are properly dismissed based upon qualified immunity.


B.      Federal Wiretap Act

Mr. Carrier alleges "violation of 18 U.S.C. §§ 2510-2521 which is included in the Federal Wiretap Act."  (See Doc. # 18 at 4 of 18;  *see also* Doc # 38 at 4 of 17 (arguing "a tort violation of the Federal Wiretap stat[ute]")).  Mr. Carrier makes this single conclusory allegation, but nowhere else in the SAC does he refer to the Federal Wiretap Act or relate any alleged wiretap violations to any of the Defendants.

The Federal Wiretap Act provides that a person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" is subject to criminal sanctions and civil liability. 18 U.S.C. § 2511(1)(a).  The Act also subjects to civil and criminal liability anyone who discloses the contents of an illegally intercepted communication, *see* 18 U.S.C. § 2511(1)(c), or uses the

contents of a intercepted communication, knowing or having reason to know that it was illegally obtained, *see* 18 U.S.C. § 2511(1)(d).  The Act provides a private right of action, 18 U.S.C. § 2520, and its protections apply to prisons, *United States v. Hammond*, 286 F.3d 189, 192 (4th Cir. 2002) (citations omitted).

The Act creates a law enforcement exception to what constitutes an interception.  18 U.S.C. § 2510(5)(a)(ii).  Specifically, it defines the phrase "electronic, mechanical, or other device" to exclude "equipment . . . being used . . . by an investigative or law enforcement officer in the ordinary course of his duties."  18 U.S.C. § 2510(5)(a).  "In other words, the acquisition of the contents of a communication by an investigative or law enforcement officer in the ordinary course of his duties is not an interception for Title III purposes."  *Smith v. Dep't of Justice*, 251 F.3d 1047, 1049 (D.C.Cir. 2001);  *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996).

Based upon Mr. Carrier's allegations, Defendant Lundstedt is properly deemed an "investigative or law enforcement officer" under the statute.  *See United States v. Lewis*, 406 F.3d 11, 16-18 (1st Cir. 2005) (stating "[i]t is well-settled that federal corrections officers are investigative or law enforcement officers under Title III" and affirming district court's finding that prison telephone systems administrator was an "investigative or law enforcement officer") (internal quotation marks and citations omitted);  *Gilday v. Dubois*, 124 F.3d 277, 282 n. 7 (1st Cir. 1997) (noting that U. S. District Court for the District of Massachusetts determined that Massachusetts Department of Corrections officials fall within the Title III law enforcement exception).[6]  Mr. Carrier's allegations also indicate that Defendant Lundstedt's recording of his

---

[6]     While at least two courts have found that detention center employees were not law enforcement officers for purposes of Title III, *See United States v. Faulkner*, 323 F.Supp.2d 1111, 1114-16 (D.Kan. 2004);  *Huguenin v. Ponte*, 29 F.Supp.2d 57, 66 (D.R.I. 1998), those cases involved facilities run by private corporations under a contract with the government, and the courts focused on the fact that employees of those private corporations were not state officers. This reasoning is inapposite to the

calls was within the ordinary course of her official duties.  *See, e.g., Lewis*, 406 F.3d at 17-18;

*Smith*, 251 F.3d at 1050;  *Amati v. City of Woodstock*, 176 F.3d 952, 955 (7th Cir.1999) (routine

police practice of recording all calls to and from the police department was within the ordinary

course of law enforcement duties);  *Van Poyck*, 77 F.3d at 292.  The recordings therefore fit

squarely within the case law applying the § 2510(5)(a)(ii) law enforcement exception to

"recordings made by prison authorities who routinely monitor inmates' conversations" and is not

an interception for Title III purposes.  *Smith*, 251 F.3d at 1050.  Mr. Carrier thus fails to state a

claim for violation of the Federal Wiretap Act.


Accordingly, IT IS RECOMMENDED that:

1.      "Defendants' Motion to Dismiss Second Amended Prisoner Complaint (Doc. No.

18) Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)" (filed June 3, 2014) (Doc. # 34) be GRANTED.

2.      All claims against Defendants Fitch and Bryant pursuant to § 1983 in their official

capacities be dismissed without prejudice based on Eleventh Amendment immunity.[7]

3.      All claims against Defendants Fitch and Bryant pursuant to § 1983 in their

individual capacities be dismissed with prejudice based on prosecutorial immunity.

4.      All claims against Defendant Lundstedt pursuant to § 1983 in her individual and

official capacities be dismissed for failure to state a claim to which relief can be granted.

---

present case, which involves a government-run facility, and thus does not conflict with the court's
conclusion that Defendant Lundstedt is an "investigative or law enforcement officer" for purposes of §
2510(5(a)(ii).

[7]        "Generally, a dismissal for lack of subject matter jurisdiction is without prejudice and does
not have a preclusive effect."  *Garman v. Campbell County Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir.
2010).  *See also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the
district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.").

5.     Mr. Carrier's claim for violation of the Federal Wiretap Act be dismissed for failure to state a claim to which relief can be granted.

6.     No claims or Defendants remaining, this civil action be dismissed in its entirety.[8]

## Advisement to the Parties

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");

---

[8]     Based on this Recommendation, the court does not reach at this time the argument of Defendants Bryant and Fitch that the one-year statute of limitations, Colo. Rev. Stat. § 13-80-103(c), bars Mr. Carrier's § 1983 claims against them.  Also, Defendants previously agreed to narrow the scope of their Motion to withdraw their argument that Mr. Carrier failed to exhaust his administrative remedies, reserving their right to raise the issue of exhaustion in a motion for summary judgment.  (*See* Doc. # 42).

*International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);   *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).   *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 22nd day of December, 2014.

BY THE COURT:


__s/Craig B. Shaffer_____
United States Magistrate Judge